UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>STEFAN KIRKEBY,<br><br>    Defendant. | Case No. 1:22-CR-00228-JLT-SKO<br><br>ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA<br><br>(Doc. 59) |

Mr. Kirkeby contends that he should be permitted to withdraw his guilty plea for various reasons including that he did not personally consent to his plea being taken via Zoom, he had difficulty hearing the proceedings and because his attorney failed to defend him adequately. Because none of his contentions are supported by the record and are instead, flatly contradicted by it, he has not demonstrated a fair and just reason to be allowed to withdraw his plea. Consequently, his motion is **DENIED**.

**I.    BACKGROUND**

On August 4, 2022, in Yosemite National Park, a Park employee, D. Wright, heard yelling in which a man was threatening to beat his wife and to kill himself. (Doc. 1 at 1) Wright spoke to three witnesses, who reported hearing the man, later identified at Stefan Kirkeby, threaten Kirkeby's wife, Y.Z. *Id*. Ranger Vollmer spoke to Y.Z., who reported that she and Kirkeby were arguing. Kirkeby pulled Y.Z.'s arm and then pushed her so that the two both fell to the ground.

1  *Id*. at 2. When Y.Z. screamed, Kirkeby put his hand over her mouth. *Id*. A bystander pulled
2  Kirkeby off Y.Z. *Id*.

3  Ranger Vollmer saw scratches on Y.Z.s' arms and saw that her hands and clothing were
4  dirty. (Doc. 1 at 2) Y.Z. reported that this was due to the incident with Kirkeby. *Id*. Y.Z. reported
5  that in the past, Kirkeby had tried to suffocate her by placing his hand over her mouth and nose
6  and by placing a pillow over her face. *Id*. Y.Z. said that Kirkeby became angry easily and that she
7  did not feel safe returning to their hotel room. *Id*.

8  Vollmer spoke to Kirkeby who reported that he had held Y.Z. tightly earlier in the evening
9  and told her that he loved her. Doc. 1 at 2) He denied that there had been any domestic violence.
10 *Id*. Despite this denial, Vollmer arrested Kirkeby for violating 18 U.S.C. § 2261(a)(1), Interstate
11 Domestic Violence[1]. *Id*.

12 Four months before this, on April 17, 2022, Mr. Kirkeby had been arrested for assaulting
13 his wife in their home. (Doc. 56 at 7-8) As a result, the Marin County Superior Court issued an
14 emergency protective order for Y.Z. *Id*. The day after the court issued the protective order, Mr.
15 Kirkeby was arrested for violating its terms. *Id*. at 9. Due to a prior incident of domestic violence
16 occurring on June 30, 2021, during which the police were called, various charges were filed
17 against Mr. Kirkeby and were pending. *Id*.

18 Mr. Kirkeby appeared via video conference to enter his plea. (Doc. 42) By this time, he
19 had never appeared in person in court and had always appeared via video conference—eight
20 times in total. Each time, the Court made findings related to the pandemic according to the
21 CARES Act. (Docs. 2, 5, 7, 11, 21, 23, 38, 42) At the onset of the hearing, the Court made the
22 findings required by the CARES Act. (Doc. 75) Rather than have the Court restate the findings,
23 when the Court asked for the appearances of counsel. Mr. Kirkeby's counsel, Mr. Cannon, stated,

24  Good morning, Your Honor. Christopher Cannon appearing on behalf of Stefan
25  Kirkeby, who's appearing via Zoom. We would waive his appearance and ask the
    Court to readopt its statements regarding the necessity of a virtual hearing that it
26  made when it called the first case.

27  MS. MONTOYA: And the government agrees with that, Your Honor.

28
---
[1] The interviews were recorded by body worn cameras. (Doc. 1 at 2)

1
2
      THE COURT: All right. I will adopt the findings previously found based upon Mr. Kirkeby's waiver of his rights of in-person appearance. I will find we may proceed by video appearance today.

3
4
5
6
(Doc. 51 at 2) Before the hearing on the change of plea, Mr. Cannon discussed with Mr. Kirkeby "the videoconferencing – Zoom – procedure with him and he understood that although he had the right to be personally present, he would be appearing via Zoom. He agreed to this procedure and at no time did he state he wanted to be personally present for his hearing." (Doc. 73 at 2)

7
8
9
10
11
12
      Initially at the hearing, Mr. Kirkeby expressed that he was having a hard time hearing. *Id*. at 2-3. The Court told him, "If you don't hear my question or you need me to repeat or need to consult with Mr. Cannon in any way, just let me know and I can do that." *Id*. at 3. Mr. Kirkeby agreed. *Id*. During the plea colloquy he responded to each of the Court's questions though one time, he asked the Court to repeat a question by saying, "Oh, I'm sorry, I didn't quite get that." *Id*. at 13.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
      During the plea colloquy, Mr. Kirkeby confirmed he understood what was happening at the hearing and that he had had enough time to consult with his lawyer about his case, the defenses to it and his decision to enter a guilty plea. (Doc. 51 at 5-6) Mr. Kirkeby confirmed he was entering his guilty plea voluntarily because he was guilty of the offense. *Id*. at 6. He confirmed that he discussed the plea agreement in detail with his lawyer and understood "each and every one of the terms" of the plea agreement. *Id*. He confirmed that, though he did not sign the plea agreement himself, he authorized his attorney to sign on his behalf and that he agreed to proceed with his guilty plea based upon the plea agreement. *Id*. at 6-7. Mr. Kirkeby confirmed that understood the role of the Sentencing Guidelines and had discussed them with his lawyer. *Id*. at 8. He stated that he understood that the guideline range applicable to his case, could not be determined until after the presentence report was prepared and counsel had an opportunity to object to the findings of the report. *Id*. at 8. He stated an understanding that any recommendations that the government, in the plea agreement, agreed to make to the Court about his case, were not binding on the Court so that if the Court did not follow them, he would not be allowed to withdraw his plea on that basis. *Id*. at 8-9. He stated an understanding that no matter the Guideline range, the sentencing judge could still impose a sentence that was either more severe or

less severe than that called for by the Guidelines. *Id*. at 9. He expressed that he understood that if sentenced to a term of incarceration, he would not be released on parole, because parole no longer existed in the federal criminal justice system. *Id*. He expressed his understanding that he had waived his right to appeal and to collaterally attack any part of his plea and sentence except in limited circumstances. *Id*. at 10. Mr. Kirkeby expressed that he understood the nature of the charge brought against him and understood the elements of the offense that the government would have to prove to convict him. *Id.* He stated that he had reviewed the indictment. *Id*. at 10-11. Mr. Kirkeby expressed that he understood the maximum penalty that could be imposed if he were convicted of the offense. *Id*. at 11. He stated that he understood what supervised release was. *Id*. at 12. Mr. Kirkeby stated that he understood that there could be consequences for entering a guilty plea if he was on probation or parole for any other offense. *Id*. at 12. He also acknowledged that the guilty plea could have a negative impact on the other criminal charges he was facing out of Marin County. *Id*. at 12-13. He stated that he understood that he could maintain the not guilty plea that he entered earlier in the case and understood his rights in that regard. *Id*. at 13. He acknowledged that he had the right to have a jury trial if he chose to go to trial and stated his understanding of all of the constitutional and trial rights that he'd be giving up by entering the guilty plea. *Id*. The Court then asked him,

> By entering a plea of guilty today, in essence what you're doing is telling me that you are guilty. Do you understand that, sir?
>
> THE DEFENDANT: Yes, Your Honor, I do understand.
>
> THE COURT: Do you still wish to enter your plea of guilty to Count One of the indictment?
>
> THE DEFENDANT: Yes, I do.

*Id*. at 13-14. After verifying that Mr. Kirkeby had not been promised anything to enter the guilty plea and had not been threatened to do so, the Court read the charge from the indictment and Mr. Kirkeby entered a guilty plea. *Id*. at 14-15. Finally, the government read into the record the modified factual basis for the plea:

> On or about August 4th, 2022 witnesses heard a domestic violence incident in progress at the Happy Isles trail in Yosemite National Park involving defendant Kirkeby and his wife Y.Z. Yosemite National Park is within the special maritime

> and territorial jurisdiction of the United States and located within the State and Eastern District of California.
>
> Defendant Kirkeby was subject to a peaceful contact order issued May 26, 2022 by the Marin County Superior Court ordering him not to harass, strike, threaten, assault (sexually or otherwise), follow, stalk, molest, destroy or damage the personal or real property, disturb the peace, keep under surveillance, or block the movements of a protected person - the victim in this matter. Defendant Kirkeby argued with and physically assaulted Y.Z. during the course of the domestic violence incident. Witnesses heard defendant Kirkeby threaten to assault Y.Z. and then kill himself. Defendant Kirkeby attempted to stop Y.Z. from screaming for help and third parties intervened. Defendant Kirkeby inflicted minor injuries upon Y.Z. when they fell to the ground including minor bruising, minor swelling, minor scratches, resulting in the complaint of pain. Kirkeby thereby assaulted Y.Z. by wounding her.
>
> Defendant Kirkeby and Y.Z. were married, cohabitated with each other and were involved in a relationship of a romantic and intimate nature at the time of the assault.

*Id*. at 15-16. The Court then inquired, "Mr. Kirkeby, is that an accurate statement of what you did in this case?" to which Mr. Kirkeby responded, "Yes, Your Honor." *Id*. at 16. The Court then accepted the plea and set the matter for sentencing. *Id*. at 16-17.

The government recommend that Mr. Kirkeby be released pending sentencing. *Id*. at 17. Despite the continued recommendation from Pretrial Services that Mr Kirkeby not be released, the Court ordered Mr. Kirkeby to be released, with conditions of supervision. (Doc. 51 at 17-27) Due to the outstanding warrant from Marin County for Mr. Kirkeby violating the terms of the restraining order protecting his wife, Mr. Kirkeby was released from federal custody and transferred to Marin County. *Id*

About three months later, Mr. Kirkeby substituted his current counsel into the case. (Docs. 46-47) New counsel then filed a stipulation to have the sentencing hearing continued for three months and then for another three months. (Docs. 48, 52) On October 20, 2023, the Court removed the location monitoring condition of Mr. Kirkeby's pretrial release because his wife had left the country. (Doc. 55)

In the meanwhile, on October 30, 2023, the probation officer filed the draft presentence report. (Doc. 56) In connection with this report, the probation officer interviewed Mr. Kirkeby who "accepted responsibility for his actions as detailed in the factual basis of the plea agreement." *Id*. at 5. Mr. "Kirkeby advised he feels terrible that the instant offense, and the other

5

1  incidents, happened." *Id*. at 5. In recommending a two-level decrease in the offense level, the
2  probation officer reported, "Mr. Kirkeby has clearly demonstrated acceptance of responsibility for
3  the offense as he acknowledged his participation in the offense and accepted responsibility for his
4  actions by admitting to the factual basis included with the plea agreement." *Id*. at 6. Even still, the
5  probation officer found that the Total Offense Level was 19 and his criminal history category was
6  I. *Id*. at 7.  The guideline range was 30 to 37 months. In addition, the probation officer found that
7  Mr. Kirkeby could pay a fine, after considering his financial status. *Id*. at 15. One month later,
8  Mr. Kirkeby filed his motion to withdraw his plea. (Doc. 59)

9  **II.    Analysis**

10  Rule 11(d) (2)(B) provides: "[a] defendant may withdraw a plea of guilty ... after the court
11  accepts the plea, but before it imposes sentence if: ... the defendant can show a fair and just
12  reason for requesting the withdrawal. "[P]ermitting withdrawal is, as it ought to be, the exception,
13  not an automatic right.'" *United States v. Minasyan*, 4 F.4th 770, 779 (9th Cir. 2021) (quoting
14  *United States v. Ensminger*, 567 F.3d 587, 593 (9th Cir. 2009)), cert. denied, 142 S. Ct. 928
15  (2022). "Although [the fair and just reason] standard is liberal, it must be consistent with 'Rule
16  11's purpose of ensuring some finality at the time pleas are accepted.'" *Id*. at 778 (quoting
17  *Ensminger*, 567 F.3d at 593 (quoting *United States v. Rios-Ortiz*, 830 F.2d 1067, 1069 (9th Cir.
18  1987))).

19  This standard has been met in cases with "inadequate Rule 11 plea colloquies, newly
20  discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that
21  did not exist when the defendant entered his plea." *Minasyan*, at 779 (quoting *Ensminger*, 567
22  F.3d at 590–91 (citations omitted)). "A defendant does not always have the right to withdraw a
23  plea because the decision to allow withdrawal of a plea is solely within the discretion of the
24  district court." *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir.2003).

25  **A.    The CARES Act does not require the defendant to personally waive his personal**
26  **appearance.**

27  At the onset of the Court's calendar on the day Mr. Kirkeby entered his plea, the Court
28  made findings supporting that proceeding by video conference was needed and appropriate. (Doc.

6

1    75) Mr. Kirkeby's counsel, after stating his appearance, and with Mr. Kirkeby present via Zoom,
2    indicated that Mr. Kirkeby consented to proceed by video conference and requested the Court to
3    adopt the findings previously made rather than restating them. (Doc. 51 at 2) After the
4    government also consented, in response, the Court stated, "All right. I will adopt the findings
5    previously found based upon Mr. Kirkeby's waiver of his rights of in-person appearance. I will
6    find we may proceed by video appearance today." *Id*. This is consistent with Mr. Cannon's sworn
7    statement: "Prior to Mr. Kirkeby entering his plea of guilty, I discussed with him the
8    videoconferencing – Zoom – procedure with him and he understood that although he had the right
9    to be personally present, he would be appearing via Zoom. He agreed to this procedure and at no
10   time did he state he wanted to be personally present for his hearing. At no time after he entered
11   his plea via Zoom did he contact me complaining of the procedure." (Doc. 73 at 2)

12   Mr. Kirkeby paints a different picture. (Doc. 59-5 at 4) He claims that he was surprised by
13   the Zoom appearance because he thought that the hearing would be in person. *Id*. Notably, this
14   was the eighth time he had appeared in court on the charge and the eighth time he did so by video
15   conference. (Docs. 2, 5, 7, 11, 21, 23, 38, 42) At no time at the hearing did he contradict Mr.
16   Cannon's report that Mr. Kirkeby wished to proceed by video conference or express any
17   expectation that he would appear in person. Even still, Mr. Kirkeby argues that because he did not
18   personally give his consent to proceed by video conference, proceeding in this fashion was error.
19   However, courts have determined that an exchange between the Court and the defendant is not
20   necessary to ensure the defendant consents to proceed by video conference. *United States v.*
21   *Howell*, 24 F.4th 1138, 1144 (7th Cir. 2022); *See United States v. Navarrete*, 88 F.4th 672, 673-
22   675 (7th Cir. 2023).[2]

23   **B.    The evidence demonstrates that the defendant heard the Court's questions and**
24   **participated fully in the guilty plea colloquy**

25   The defendant asserts that he had difficulty hearing the Court's questions during the guilty

---

[2] Mr. Kirkeby cites to *United States v. Garnes*, 2:20-cr-00239 (Doc. 49) and notes that the parties in that case filed a written stipulation that they would proceed via videoconference for the arraignment and change of plea. However, Mr. Kirkeby cites to no authority that such a written stipulation was required. Even still, the Court notes that the defendant in *Garnes* did not sign the stipulation. Rather, it was signed only by counsel. Thus, the Court is stymied as to how *Garnes* helps the analysis here.

7

plea colloquy[3]. (Doc. 59 at 12-14) Despite this difficulty, Mr. Kirkeby responded appropriately to the questions posed by the Court and raised issues he wished addressed. The very first thing the Court told Mr. Kirkeby at the beginning of the colloquy was, "If you don't hear my question or you need me to repeat or need to consult with Mr. Cannon in any way, just let me know and I can do that." (Doc. 51 at 3) Mr Kirkeby responded, "Thank you." *Id*. The Court again told him, "And if you at any time don't understand what I'm saying, if you can't hear me, please let me know because it's very important that you understand each of my questions before you respond." *Id.* At that point, Mr. Kirkeby reported difficulty hearing, so the correctional officer checked the sound and the Court committed to speaking louder. *Id*

Near the end of the colloquy, in response to a question, Mr. Kirkeby reported, "I didn't quite get that," so the Court repeated the question and he responded appropriately. (Doc. 51 at 13) Throughout the rest of the colloquy, he did not express that he did not hear the questions, ask to have any question repeated, demonstrate any hesitance in moving forward, ask to consult with Mr. Cannon or in any way indicate that he wished to do anything else than to enter the plea. Thus, the Court find that to the extent that there is an insufficient showing that Mr. Kirkeby's plea was not knowing and voluntary.

**C.     The factual basis was sufficient to support the guilty plea**

Mr. Kirkeby argues that at the time of the change-of-plea hearing, he had "not seen the new plea agreement." (Doc. at 10-11) In truth, Mr. Kirkeby was referring only to the amended agreed-upon, written factual basis for his plea. (Doc. 55 at 11, 15-16) Notably, the factual basis was amended by the government at Mr. Kirkeby's request to eliminate the sentence, which read, "Defendant KIRKEBY grabbed both Y.Z.'s wrists and they fell to the ground." (Doc. 41 at 10; Doc. 51 at 16) At the hearing, the government's attorney read the amended factual basis into the record, and Mr. Kirkeby agreed that it was an accurate statement of what he did. (Doc. 55 at 16)

The factual basis addressed each of the elements of the offense. First, it demonstrated that

---

[3] In making this argument, he cites to communications occurring *after* Mr. Kirkeby entered his plea and the Court accepted it. (Doc. 59 at 14; lines 15-19) It seems apparent that in doing so Mr. Kirkeby is trying to make it appear as though he had a greater difficulty hearing the colloquy than the record reveals or, in fact, that he experienced.

1  Mr. Kirkeby was present in Yosemite National Park, which is within the special maritime and
2  territorial jurisdiction of the United States on the day that the event occurred. Second and third, it
3  demonstrated that through his conduct in trying to stop his wife, by physically assaulting her,
4  from yelling for help, "Defendant Kirkeby inflicted minor injuries upon Y.Z. when they fell to the
5  ground including minor bruising, minor swelling, minor scratches, resulting in the complaint of
6  pain. Kirkeby thereby assaulted Y.Z. by wounding her." (Doc. 51 at 16) Thus, this does not
7  provide an adequate basis for Mr. Kirkeby to withdraw his plea.

**D.     The fact that the defendant's wife has stated she was not "hurt," does not demonstrate factual innocence.**

Mr. Kirkeby argues that he has heard from others that his wife has expressed that he did not "hurt" her during the altercation. (Doc. 59-5 at 3) He presents no declaration from his wife detailing either that she made the statement or, if she did, what she meant by it. Assuming she made such a statement and assuming she meant that suffered no injury whatsoever, it is contrary to the evidence and does not demonstrate a claim of factual innocence.

On the day of the events, Ranger Vollmer interviewed the victim, and this interview was captured on video. During the interview, "Y.Z. advised that [after the defendant became angry] Kirkeby started to grab her arms and hands, and at one point, he pushed her with both hands. They both fell to the ground, and she landed in a bush. Y.Z. advised that Kirkeby did not strike her otherwise. While on the ground, Kirkeby yelled at Y.Z., who advised she began to scream for help, which caused Kirkeby to cover her mouth with his hand."  (Doc. 56 at 4) Also, "Y.Z. stated she had no injuries except for bruises and scratches on her arms, and she declined medical attention." *Id*. Two witnesses reported that Kirkeby was "threatening to kill "her" and threatening to kill himself." *Id*. at 5.

At the change of plea hearing, Mr. Kirkeby admitted that, in fact, he did hurt Y.Z. (Doc. 51 at 16) He admitted also that he was entering his plea because he was guilty. (Doc. 51 at 6) During his interview with the Probation Officer, he "accepted responsibility for his actions as detailed in the factual basis of the plea agreement" and expressed that he "feels terrible that the instant offense, and the other incidents, happened." *Id*. at 5. Thus, the fact that Mr. Kirkeby now

has "heard" from others that his wife has said that he did not hurt her, is insufficient to demonstrate either that he is innocent of the offense or that he should be allowed to withdraw is plea.

**D.  The evidence demonstrates that the defendant had neither erroneous nor inadequate legal advice when entering his plea.**

Mr. Kirkeby argues that because the plea agreement did not mention the word "felony," it was ambiguous. (Doc. 59 at 17) He ignores that the plea agreement specifically recites the maximum possible penalty as five years in custody. (Doc. 41 at 6) Also, at the time he entered his plea, the Court told him, "The offense to which you are offering to plead guilty is a felony. If I accept your plea, you will be found guilty of the offense. That finding may deprive you of valuable civil rights, such as the right to vote, the right to serve on a jury and the right to possess firearms and ammunition of any kind. Do you understand that?" (Doc. 51 at 8) He responded, "Yes, I do, Your Honor." *Id*. In addition, Mr. Cannon attested that, though he had hoped to negotiate the case down to a misdemeanor, he "specifically" told Mr. Kirkeby that the charge was a felony and never promised that it "would be resolved for a misdemeanor." (Doc. 73 at 2) In fact, Mr. Kirkeby admits this in his declaration when he states, "Mr. Cannon said that I would have to take a felony charge. [The government] would not reduce the charge." (Doc. 59-5 at 3)

Mr. Kirkeby's claim in his declaration that he had not reviewed the plea agreement with his attorney (Doc. 59-5) is also contrary to Mr. Cannon's declaration (Doc. 73 at 1, 2) and contrary to Mr. Kirkeby's sworn statement made in open court (Doc. 51 at 5-6). At the hearing, he stated that he had had enough time to discuss his case and any defenses he might have to it, as well as his decision to enter a guilty plea with his lawyer. *Id*. at 5-6. He said he was satisfied with the representation his attorney had given him. *Id.* at 6. He said he had reviewed the plea agreement with his lawyer and understood "each and every one of the terms of [his] plea agreement." *Id*. at 6, 7. Before making these statements to the Court, he was placed under oath, and the Court admonished him that he must tell the truth and if he failed to tell the truth, he could be prosecuted for perjury or for making a false statement. *Id*. at 3. He stated that he understood this admonishment. *Id*.

Mr. Kirkeby claims that Mr. Cannon did not discuss the Sentencing Guidelines with him (Doc. 59-5 at 4-5) and instead Mr. Cannon told him that if he plead guilty "he would be back with his wife in sixty-days" even though, "theoretically [he] could serve more time." *Id*. Once again, this is exactly opposite of what was in the plea agreement ["The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive." (Doc. 41 at 20)], and directly contrary to what he said in court ["Have you and Mr. Cannon talked about those advisory sentencing guidelines and how they will apply in your case? THE DEFENDANT: Just a few days ago, Your Honor, yes." (Doc. 51 at 8-9)] His declaration flies in the face of nearly everything he said under oath at the time he entered his guilty plea.

## CONCLUSION

From the information in the record and that provided at the hearing, it is apparent that Y.Z. now lives in her native country, China. (Doc. 55; Doc. 81 at 19) It appears possible that she may not wish to be part of the prosecution given Mr. Kirkeby's claims about what she has said. (Doc. 59-5 at 3) Seemingly, Mr. Kirkeby recognizes these conditions and believes that if he is allowed to withdraw his plea, the government may have a more difficult time proving the case and may be forced to dismiss it or to offer him a more favorable plea deal. The fact that Mr. Kirkeby now may have a better chance of winning his case does not demonstrate a fair or just reason to allow him to withdraw his plea. On the other hand, the timing of his request to withdraw his plea–about nine months after entering it—and 30 days after the probation officer filed the draft presentence report indicating the guideline range of 30 to 37 months, suggests that he does not wish to accept the punishment that the guidelines propose. For these reasons, the motion is **DENIED**. Mr. Kirkeby is **ORDERED** to appear for sentencing on February 3, 2025 at 9:00 a.m.

IT IS SO ORDERED.

Dated: **November 13, 2024**

UNITED STATES DISTRICT JUDGE